The Chancellor.
As. to the mortgage executed by Abraham J. Jeroloman and others to John Williams, and .by Williams assigned to the complainant, there is no dispute, either as to the amount due upon the mortgage, or of its being a valid lien upon the mortgaged premises.
The first question in controversy between the parties grows out of the mortgage executed to William Whitfield. This mortgage is absolute upon the face of it. But it was executed in trust, and the trust is declared in an instrument of writing between Abraham J. Jeroloman and the mortgagee. Parol evidence was taken to show the intention of the parties, and the construction they put upon the writing. The evidence is altogether inadmissible. There is nothing in the case to justify the court in receiving it. There is no ambiguity in the instrument itself, and the allegation of fraud or mistake is not sustained by any proof. The writing must speak for itself, and must settle the rights of the parties who have any interest secured by it. By the very plain construction of the instrument, it secures, first, to William Whitfield, John Ken *109 nedy, and Abraham V. Speer such sum or sums of money as were due and owing to them, or to either of them, from Abraham J. Jeroloman at the time of its execution, as well as all such sums of money as they should advance on account of any judgments, or other claim or debt then existing against Jeroloman, and the interest accruing thereon; and second, it secures to John S. King, William H. Brant, Peter Cooman, and Minard Cooman, the several amounts of money then due and owing to them, or either of them, and to Joseph Budd the sum of one hundred dollars. All these individuals are made parties to this suit. They none of them make any claim to the trust fund. It is admitted that these claims have all been extinguished, except those of the complainant and of Abraham Y. Speer and John S. King. The complainant alleges that the claims of Speer and King were assigned to him, and, as assignee of their respective interests, he claims payment out of the trust fund.
The bill alleges, that all the debts secured by the mortgage under the declaration of trust, except those claimed by the complainant, and all the advances made under it, if any were made, have been paid off and satisfied by Abraham J. Jeroloman. The evidence is very satisfactory that the trustee has never been paid the debt secured to him; that all the claims that have been satisfied were paid by the trustee; and that, for these payments, and the further advances made by him, he is entitled to the full amount secured by the mortgage, subject to such liens as may exist upon the fund for the debts of Speer and King. The settlement made between the trustee and Jeroloman appears to have been a bona fide one, and is in no way impeached. Jeroloman admitted, in the settlement; that the whole amount due upon the mortgage had been advanced by the trustee; and Jeroloman does not now question that settlement. It cannot be questioned by any one else, except a creditor whose rights are impaired by it.
As to. the Speer claim, Whitfield insists, in the first *110 place, that it has been extinguished. On the 6th of January, 1844, Abraham V. Speer recovered a judgment against Jeroloman for the sum of about $700. It is admitted that Speer’s debt secured by the mortgage was included in that judgment. An execution was issued upon the judgment, and all the lands embraced in the mortgage, together with considerable other real estate, were sold, and purchased by Speer, for about $200. For the land embraced in the "Whitfield mortgage, he gave $83. Whitfield insists, that Speer having purchased the mortgaged premises, thereby extinguished his debt. It is true, if the mortgagee purchases the mortgaged premises subject to the mortgage, he cannot hold the land, and enforce the payment of the mortgage debt against the mortgagor; but he may hold his mortgage to protect his title. If he purchase the mortgage premises on an execution at law against the mortgagee in favor of a third person, he purchases subject to the mortgage, and thereby extinguishes his debt. Or if he purchases the mortgaged premises under an execution upon a judgment for his mortgage debt, he thereby extinguishes his debt to the amount he gave for the land.
In this case, Speer sold the mortgaged premises to satisfy his debt secured by the mortgage, and he purchased them for $33. Had the premises been sold for this debt alone, Speer would be obliged to give a credit of $33 upon his interest in thd mortgage; but, as his judgment was for a much larger sum than the amount of his interest in the mortgage, the $33 must be credited on the whole judgment debt, and the credit upon the mortgage must be in the proportion the mortgage debt bears to the judgment debt. I name the sum of $33. This may not be the correct amount. That is to be ascertained.
■ 'Whitfield further objects to the Speer claim, that by the true construction of the trust writing, Whitfield .was secured,- not only in such sums of money, as at the time of its . execution Jeroloman actually owed him, but all *111 advances he might thereafter make for Jeroloman, and that the advances so made have priority over Speer’s interest in the mortgage. This is not the proper construction of the writing. The debt due Speer at the time of the execution of the instrument had a preference over any advances that were subsequently made by any of the parties to the instrument.
Another objection is made to the complainant’s title to Speer’s interest in the mortgage. The complainant claims that interest in the mortgage under an assignment executed to him by Speer. By the assignment, Speer assigns to the complainant the debt due him from Jeroloman, secured to him by the mortgage, and which was embraced in the $700 judgment, and all Speer’s interest in the mortgage security, and also certain promissory notes which were the evidences of the debt. The complainant insists that Speer, having obtained a judgment for the debt, ought to have made an assignment of the judgment; and further, that a part of the judgment debt could not be separated from the whole, and the part only assigned. The judgment was only a further security for the debt, and did not affect the mortgage security. There certainly is no difficulty in a judgment creditor’s assigning a part of his interest in a judgment. That the judgment is not specially mentioned in the assignment, is a mere technical objection. Whatever the complainant receives of the Speer claim under this mortgage, Jeroloman will be entitled to have credited on the judgment. It is a bona fide assignment of the debt due Speer under the mortgage and of the mortgage security. Such was the intention of the parties; and this court will carry out such intention, and will not permit any mere technical objection to defeat it.
The next question is, as to the debt secured John S. King under the mortgage. I do not think there is any difficulty as to the complainant’s title to this claim. The evidence of the debt was a promissory note, which the *112 complainant now holds. Having a legal claim to the debt in equity, he is entitled to the benefit of the security. The attempt to impeach the transfer of the note was not successful. But in the question, as to who is entitled to the proceeds of this claim, Whitfield is not interested, except as trustee. The King debt is secured by the mortgage. It has never been paid. Its lien, therefore, upon the mortgage fund is still subsisting. The only serious difficulty is, as to priority between this debt and the advances which Whitfield made subsequent to the execution of the trust writing. We cannot speculate as to the intention of the parties. The language of the instrument will, I think, bear but one interpretation. The debts of Whitfield, Kennedy, and Speer, then due, and any advances they should make on account of any judgment, or other claim, or debt, then existing against Jeroloman, were first secured, and then the King and other debts particularly mentioned. Whitfield then is to be paid any debt due him from Jeroloman at the time the mortgage was executed, as well as any advances he has made since on account of any judgment, claim, or debt, then existing against Jeroloman; and these advances, having been made according to the terms of the instrument, have a preference in payment over the King debt.
Independent of these several matters, there are some payments which were made by Whitfield, as trustee, for the purpose of protecting the trust fund, for which he is entitled to be reimbursed, and for which the trust fund is first liable. He paid $50 on the complainant’s mortgage, which has priority over the trust mortgage. It being a prior lien, the trust fund was subject to it, and the complainant, having paid the money for the relief of the fund, must be repaid. The trust mortgage was also subject to a judgment of some two or three hundred dollars. The complainant relieved the fund from this encumbrance. For this amount, likewise, he is to be indemnified.
*113 This disposes of all the questions that arise under the Whitfield mortgage. The result of the views I have taken of the several matters in controversy is—
First. That Whitfield is entitled to the first lien on the trust fund, for the amount paid by him for its protection, being the sum paid to the complainant for interest due on his mortgage, and the sum paid on the Joseph II. Williams’ judgment, together with interest on those advancements.
Second. Whitfield is to be paid such sums of money as were due and owing to him from Jeroloman at the date of the mortgage, and the interest.
Third. The complainant is to be paid the amount of any such sums of money as were due and owing from Jeroloman to Abraham Y. Speer at the date of the mortgage, and the interest, after crediting, in the manner before specified, the amount Speer paid for the mortgaged premises at the sheriff’s sale under his judgment and execution.
Fourth. Whitfield is to be paid any such sums of money, and the interest, as he has advanced on account of any other claims or debts existing against Jeroloman at the date of the mortgage.
Fifth. The complainant is to be paid the amount of the King debt secured by the mortgage, together with the interest.
The next controverted question is, as to the deed executed by Abraham J. Jeroloman and wife, and Gitty Jeroloman, to William Whitfield, for a part of the mortgaged premises. The bill alleges, that Gitty Jeroloman having executed that deed without her husband, it is void. It is true that, for the reason alleged, the deed does not pass any interest Gitty Jeroloman had in the land; but it passed the title of Abraham J. Jeroloman and his wife. The complainant, however, has no interest in this question. The conveyance is subject to' both mortgages, and the validity of the deed, therefore, cannot affect any *114 •interest under the mortgages. The question is only important as between the defendants claiming an interest in the surplus money. Abraham Y. Speer claims an interest-in the surplus by virtue of his purchase and deed under his; judgment. But as to Speer’s claim, it can cover no more than the interest which Abraham J. Jeroloman had in the premises at the date of the judgment. I cannot see, therefore, that, by virtue of his purchase under the judgment, it becomes of any importance to Speer whether the interest of Gitty Jeroloman passed under that deed or not. With regard to the land conveyed to William Whitfield, it must not be sold, unless there is a deficiency after a sale of the other land embraced in the mortgages, -to satisfy the mortgage debts.
There is one other question involved in this controversy. On the 21st of April, 1843, Abraham J. Jeroloman a-eleased to Gitty Jeroloman all his right and interest in a part of the mortgaged premises. This deed bears date prior to the judgment of Speer against Jeroloman. The bill alleges, that this deed of release is fraudulent, and was executed with the intent and purpose of defrauding the creditors of the grantor. A. Y. Speer, by his answer, sets up the same defence against the deed, alleging that it is void and of no effect against his judgment. If the question of fraud was the only one involved as to this part of the case, I could not decide the question as it is presented by these pleadings. It is a question in which the complainant is not1 interested. Before I could decide it, it would be necessary for Speer to file a cross-bill to set aside the conveyance. But there are other difficulties, which render a cross-bill necessary. Admitting the deed to be fraudulent, and for that reason void as to Speer’s judgment, what interest in the premises did Jeroloman convey by this deed, and what interest in the surplus would Speer then have by virtue of his judgment ? He would be entitled to the interest which Abraham J. Jeroloman would be entitled to. What is that interest ? It *115 cannot be ascertained from these pleadings. The hill alleges that Abraham and his wife, and James J. Jeroloman and his wife, were seized of the fee, and so the answers admit; hut what were their respective interests in the fee does not appear. Abraham Y. Speer having purchased only the equity of redemption of Abraham J. Jeroloman, Speer’s right cannot he determined without first ascertaining what the interest of Abraham J. Jeroloman was. That issue is not made by the pleadings. To settle the controversy, as to the release of Abraham Jeroloman to Gitty Jeroloman, and what Speer’s rights are under his purchase, it is necessary that he should file a cross-hill.
This cause must therefore stand over, in order to give Speer, an opportunity of presenting his case by proper .pleadings. If he fails to file his hill within thirty days, a decree will he made to sell the mortgaged premises to pay off the mortgage debts, and the surplus will he ordered to be brought into court to abide its further order.